UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WARREN MERRILL

               Plaintiff,

      v.

 ANTHONY GOLIK, as employee, agent
and/or Prosecutor for Clark County;
ARTHUR CURTIS, ANNA KLEIN,
Individually and as employee, agent and/or
Prosecutor for Clark County; SCOTT
JACKSON, Individually and as employee,
agent and/or Prosecutor for Clark County;
CLARK COUNTY, a political subdivision of
the State of Washington; JENNIFER
HUBENTHAL, Individually and as an
employee, agent and/or police officer for the
City of Vancouver and Clark County; CITY
OF VANCOUVER, a political subdivision of
the State of Washington; JOHN DOE, JANE
DOE AS AGENTS OF Clark County and/or
the City of Vancouver,

               Defendants.

CASE NO. C12-5674 KLS

ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

     All of the defendants have filed Motions for Summary Judgment seeking dismissal of all

claims against them.  ECF No. 24, 29 and 41.  The Plaintiff filed a Response in opposition to

each motion (ECF No. 59 – 61) and the Defendants filed their Replys.

1   In this case, Mr. Merrill sued the various defendants alleging violation of state law as

2   well as of his constitutional rights when he was charged with sexual abuse of his two daughters.

3   He brings suit against the investigator, Detective Jennifer Hubenthal, the current Prosecuting

4   Attorney for Clark County, Anthony Golik, the previous Prosecuting Attorney for Clark County,

5   Arthur Curtis, and two current Deputy Prosecuting Attorneys for Clark County, Anna Klein and

6   Scott Jackson.  In addition he is suing Clark County and the City of Vancouver.

7       Having reviewed the pleadings filed by all the parties, it is the Court's determination that

8   all the summary judgment motions filed by the Defendants should be GRANTED.

9                              **DEFENDANTS' MOTIONS TO STRIKE**

10      Prior to addressing the facts of the case, the Court must address the Motions to Strike

11  raised by the Defendants in their respective Replys.

12      In support of his Response, the Plaintiff filed the Declaration of Peter Fels, one of

13  Plaintiff's attorneys.  Counsel attached a number of documents to his declaration asserting that

14  he was attaching true and correct copies "as specified in the table of contents to the exhibits."

15      The Defendants moved to strike Exhibits E, H, I, K, M, O, P, Q, W, Y-1, KK and NN as

16  well as the Declaration of Josephine Townsend (ECF No. 62).  For the reasons set forth below,

17  the motions are GRANTED.   None of these exhibits will be considered by the Court for

18  purposes of the various summary judgment motions.

19      "An affidavit or declaration used to support or oppose a motion must be made on

20  personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

21  or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56 (c)(4).  Thus, only

22  evidence and testimony that would be admissible at trial can be considered on summary

23  judgment.  This includes the obligation to authenticate the proposed evidence.  "We have

24  repeatedly held that unauthenticated documents cannot be considered in a motion for summary

1  judgment." *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir. 2002).  The assertion by Mr. Fels

2  that he has attached true and correct copies of the opposed exhibits falls short of the evidentiary

3  requirements.

4         None of the identified exhibits are based on Mr. Fels personal knowledge, he had no hand

5  in their creation, he could not testify to them at trial (regardless of the fact that he is one of the

6  attorneys for the Plaintiff), and the documents are not authenticated.  In addition, the Court has

7  already excluded Exhibit P, the supplemental report of John D'Angelo.

8         Counsel for the City of Vancouver and Clark County both move to strike the Declaration

9  of Josephine Townsend (ECF No. 62), who is one of the attorneys for the Plaintiff.  The first

10  basis to strike the declaration is the fact that Ms. Townsend has not previously been disclosed as

11  a witness who possessed discoverable information.  Further, as a consequence of such failure, the

12  Defendants assert that she should be precluded from presenting any evidence in this motion

13  pursuant to Fed. R. Civ. P. 37(c)(1).  The Court agrees that this is a proper basis to strike Ms.

14  Townsend's declaration.

15         In addition, the Defendants assert that Paragraphs 5 and 6 contain hearsay and are not

16  admissible if presented for the truth of the matter – which it is.  The Court agrees.

17         Finally, the Defendants assert that Exhibit A should be stricken.  In paragraph 7 Ms.

18  Townsend states that Exhibit A is a true and correct copy.  The Court agrees Exhibit A should be

19  stricken as it is not properly authenticated, is not based on personal knowledge and Ms.

20  Townsend would not be competent to testify on the matters stated.

21                          **PLAINTIFF'S MOTION TO STRIKE**

22         Counsel for Det. Hubenthal filed two declarations which were executed by E.M. and

23  A.M.  ECF No. 72 and 73.   The two declarations now show different initials but that is due to

24  the fact they now go by different last names.

1    Plaintiff's counsel filed a sur reply requesting these two declarations be stricken based on

2    lack of relevance to the current issues before the Court.

3    While the Court did not provide the Defendants with an opportunity to respond to the

4    Plaintiff's motion, in light of the Court's decision and in consideration of the fact that the Court

5    did not rely the two affidavits in reaching its decision, the Plaintiff's motion to strike is

6    GRANTED.

7                                       **UNDISPUTED FACTS**

8    Detective Jennifer Hubenthal is a police officer with the Vancouver Police Department

9    and has been so employed since April 2001.  In January 2008 she was assigned as a detective to

10   the Children's Justice Center, which she describes as a multidisciplinary team that investigates

11   and prosecutes child sexual/physical abuse.

12   Det. Hubenthal's involvement with the two Merrill girls came about based on complaints

13   they both made to their mother, Jennifer Hardwick, about their father physically abusing them.

14   Following that initial disclosure, on June 5, 2009 Jennifer Hardwick took her two daughters to

15   Sue Abell, M.D., at the Child and Adolescent Clinic.

16   The complaints relayed to Dr. Abell from Jennifer were that the two girls complained of

17   their father biting them on their legs, back or butts and that he had also been hitting them.

18   Jennifer Hardwick had noticed little marks on the girls' skin that could not be explained and

19   when she asked the girls about them, they said they could not remember.

20   Dr. Abel then spoke with the two girls together.  They both reported biting by their father

21   and some hitting.  Examination of EM showed some bruising on her left forearm.  E told Dr.

22   Abell that her sister had bitten her there.  Bruising was also noted on her left upper arm, right

23   mid-buttock area, superior portion of her right lower leg and left medial knee.  ECF No. 25-4, p.

24

1   3. Dr. Abell's examination of AM was normal except for her right forearm which had two

2   "barely visible curvilinear marks placed longitudinally along her arm."  ECF No. 25-4, p. 5.

3       Det. Hubenthal received notice on June 9, 2009 that she would be receiving a case from

4   the Kelso DSHS.  She contacted Karen Logan, at DSHS, as instructed.  On June 12, 2009 Det.

5   Hubenthal received Dr. Abell's written reports on her examination of the girls.  Then on June 16,

6   2009 she and Karen Logan first met with Jennifer Hardwick.  She and Karen Logan then

7   separately interviewed first E.M. and then A.M.  During the interview with A.M., she disclosed,

8   for the first time, allegations of sexual abuse.  Det. Hubenthal and Karen Logan then conducted a

9   follow-up interview with E.M. that same date with regard to the new allegations.  E.M. denied

10  being the victim of any sexual abuse.

11      Det. Hubenthal first attempted to contact the Plaintiff, Warren Merrill, on June 25, 2009

12  by leaving a message on his cell phone.  She spoke to Mr. Merrill on the phone on June 26, 2009

13  and asked to set up an interview.  An interview was then scheduled for July 1, 2009.  On June 30,

14  2009 Mr. Merrill's attorney, Jon McMullen advised that his client would not speak with her.

15      Det. Hubenthal then prepared her report dated July 1, 2009 (ECF No. 15-2) which was

16  reviewed by her supervisor, Sergeant Rex Gunderson on July 1, 2009 and he then forwarded the

17  report to the prosecutors for their consideration on that same date.  ECF No. 44, p. 3.

18  Declaration of Rex Gunderson.  Det. Hubenthal's forwarded report included the two written

19  reports from Dr. Abell.  ECF No. 30, Exh. 3, Affidavit of Kimberly Farr.

20      In July 2009 Kimberly Farr was the chief prosecutor in charge of the prosecutors at the

21  Children's Justice Center and he was the attorney who made the decision to charge Mr. Merrill

22  with two counts of Rape of a Child in the First Degree as to AM only.  ECF No. 26-10.  Prior to

23  making his charging decision, DPA Farr reviewed Det. Hubenthal's complete report as well as a

24  report from Deputy Orr of the Clark County Sheriff's Office.  The charging document, the

Information, was signed by Mr. Farr on July 30, 2009 and filed on July 31, 2009.  ECF No. 26-10; ECF No. 30.   Mr. Farr is not a named party to this litigation.  After he made the charging decision he had no further involvement in the case against Mr. Merrill.  ECF No. 30.

Mr. Farr also filed an Affidavit in Support of Issuance of a Summons (ECF No. 26-11) in which he referenced Clark County Sheriff report 09-7977 (which is Det. Hubenthal's report) as the basis for probable cause to charge the two counts of Rape of a Child in the First Degree as set forth in the Information.  In his affidavit he summarized the information in the report that supported the probable cause determination.   Clark County Superior Court Judge Robert Harris signed the Criminal Summons on or about August 4, 2009.  ECF No. 30.  The Summons directed Mr. Merrill to appear in Superior Court on Tuesday, September 1, 2009 to answer the charges filed against him.

Mr. Merrill did in fact appear in Superior Court on the date he was summonsed.  Following his initial appearance in court he was taken to the jail for booking.  He testified that he was placed in handcuffs for the booking process (ECF No. 26-6, p. 8) but that he was in handcuffs for a short period of time.  "It was probably 15 seconds, 20 seconds.  Maybe 30."  ECF No. 26-6, p. 12.  Det. Hubenthal neither arrested nor seized Mr. Merrill at any time.  Mr. Merrill's only contact with Det. Hubenthal was through voicemail and phone calls in June 2009.  He has no recollection of ever meeting Det. Hubenthal.  ECF No. 26-6, p. 8.

On June 9, 2009 Jennifer Hardwick obtained a Ex Parte Restraining Order/Order to Show Cause (ECF No. 26-17) restraining Mr. Merrill from having any contact with his daughters or Jennifer Hardwick.  A hearing was then scheduled for June 18, 2009.  ECF No. 26-17.  A stipulated order, signed by counsel for Mr. Merrill, was entered on June 18th which continued the restraining order with a follow-up court date set for July 2, 2009.  ECF No. 26-19.  On July 2, 2009 a Temporary Restraining Order was entered restraining Mr. Merrill from having any

1  contact with his children until completion of the CPS investigation.  ECF No. 26-21.  Finally, an

2  Agreed Order for Protection was entered on April 30, 2010 which was effective through August

3  28, 2020.  ECF No. 26-22.

4       On November 10, 2009 Det. Hubenthal received a phone call from Jennifer Hardwick in

5  which Jennifer advised the Detective that E.M. wanted to talk with the Detective again.  Jennifer

6  Hardwick advised the Detective that E.M. "had been asking her why everyone was talking to A

7  and not to her about what happened with their dad."  ECF No. 25-5, p. 3.  E.M. advised her

8  mother that she had not told everything to the Detective and now wanted to talk to her.  Det.

9  Hubenthal then scheduled an interview with E.M. for November 12, 2009.  Det. Hubenthal met

10  with Jennifer Hardwick on November 12, 2009 and then interviewed E.M. alone.  It was during

11  this interview that E.M. disclosed sexual abuse by her father.  Following this interview Det.

12  Hubenthal prepared another report dated December 8, 2009 which was forwarded to Anna Klein,

13  the Deputy Prosecuting Attorney assigned to Mr. Merrill's case.  Based on this report, Anna

14  Klein filed an Amended Information (ECF No. 26-13) which added additional charges against

15  Mr. Merrill related to A.M. and E.M.  ECF No. 26-4, p. 20 and 33.

16       On March 10, 2010 Mr. Merrill's defense attorney, Jon McMullen, interviewed both

17  E.M. (ECF No. 26-8) and AM (ECF 26-9).  The interviews were conducted in the presence of

18  Jennifer Hardwick and Anna Klein.  Mr. Merrill does not allege that E.M. changed her testimony

19  during this interview.  He does, however, assert that A.M. did change her testimony during her

20  interview and asserts that the change amounted to a recantation.   Defense counsel describes

21  A.M.'s testimony as inconsistent.

22       On March 17, 2010 Mr. Merrill sent an email to his family law attorney, Dru Horenstein,

23  with a copy to his criminal defense attorney, Jon McMullen, in which he instructed Dru

24  Horenstein to "draft, execute and file the necessary paper work to end my parental rights.

1   Immediately, so I can have all criminal charges dismissed immediately." ECF No.26-6, p. 22.

2   Mr. Merrill relinquished his parental rights for step-parent adoption on April 19, 2010.  ECF No.

3   26-6, p. 23 – 28.

4       On April 30, 2010 an Order was entered in Clark County Superior Court which dismissed

5   all charges against Mr. Merrill without prejudice (ECF NO. 26-14) and, one year later, on May

6   20, 2011 an Order was entered in Clark County Superior Court which dismissed all charges

7   against Mr. Merrill with prejudice.  ECF No. 26-15.  Both Orders were presented by Anna Klein,

8   Deputy Prosecuting Attorney.

9       Mary Blanchette, Executive Director of the Children's Justice Center, explained the

10  history and organization of the CJC in her Declaration.  ECF No. 33.  In 1993 several agencies

11  entered into an interlocal agreement to provide coordinated services for investigating child

12  abuse.  Those agencies included, among others, Clark County, the City of Vancouver and the

13  Clark County Prosecuting Attorney's Office.  As a result of this interagency agreement, the

14  Children's Justice Center was established.  The CJC has an investigative unit which includes

15  detectives from the Clark County Sheriff's Office and the Vancouver Police Department.  Upon

16  receipt of a report, the sergeant assigned to the Center reviews the reports and assigns those

17  reports that concern felony-level child abuse to a detective for investigation.  After investigations

18  are completed, the report is referred to the supervising deputy prosecuting attorney for filing

19  decisions and assignment to a deputy prosecuting attorney.

20      The Interlocal Agreement has been filed under ECF No. 63, Exhibit V.  Under

21  "Organization" it is noted that the Agreement does not create a separate legal or administrative

22  entity and that it does not affect the organization or functions of the parties except as provided

23  below.  An Executive Board was created that could establish policy and procedures upon the

24  majority vote of the board members.  The Executive Board has the responsibility for

1  "[e]stablishing administrative policies and procedures for the operation of the center including,

2  but not limited to, organizational structure, administration, operational hours, travel policies and

3  investigative criteria, consistent with the provisions of this interlocal agreement."  Finally,

4  personnel assigned to the CJC are deemed to be "continuing, under the employment of the

5  assigning agency, and shall be under the direct management and supervision of the center

6  director."

7                **PLAINTIFF'S CLAIMS AGAINST DET. HUBENTHAL**

8          As noted by Det. Hubenthal in her Reply, the only federal Constitutional claim addressed

9  by the Plaintiff in his Response to the Defendant's Motion for Summary Judgment was his

10 Fourth Amendment right to be "free from false arrest."  ECF No. 71, p. 12, fn. 8.  The Court

11 concludes that the Plaintiff has, therefore, waived all of his other federal Constitutional claims

12 against Det. Hubenthal.  *USA Petroleum Co. v. Atl. Richfield Co.,* 13 F.3d 1276, 1284 (9th Cir.

13 1994).

14         In his Response, Mr. Merrill asserted two constitutional violations.  The first is his Fourth

15 Amendment right "to be free from unreasonable arrest without probable cause" and the second is

16 his Fourteenth Amendment right to the care, custody and nurture of his children.  ECF No. 59, p.

17 8.

18         Initially it should be noted that Det. Hubenthal never arrested Mr. Merrill.  In fact, Mr.

19 Merrill was never arrested by any law enforcement officer.  He was summonsed into Court to

20 answer to the criminal charges filed by Deputy Prosecuting Attorney Farr.  The closest he came

21 to any type of seizure occurred after he initially appeared in Superior Court and when he was

22 handcuffed for seconds while involved in the booking process.

23         Plaintiff places great reliance on *Stoot v. City of Everett,* 528 F.3d 910 (9th Cir. 2009) in

24 support of his Fourth Amendment claim.  *Stoot*, however, is distinguishable.  In *Stoot* a police

1  officer relied solely on the statements of a four-year-old that she had been sexually abused, when

2  she was three years old, by Paul Stoot.  Based on those statements, the police officer interrogated

3  Paul at his school and without his parents present.  The interrogation lasted two hours during

4  which time the officer was able to obtain a confession from Paul regarding the abuse allegations.

5  Paul's written confession was used by the prosecuting attorney as the basis to file criminal

6  charges in juvenile court.  Following a hearing, the trial judge dismissed the charges holding that

7  the confession had been coerced and that the four-year-old victim was incompetent to testify at

8  trial.  Following the dismissal the Stoot family brought suit in federal district court.

9        The Court of Appeals concluded that the Stoots had viable claims under both the Fourth

10  Amendment (lack of probable cause) and the Fifth Amendment (coerced confession).  The Court

11  of Appeals affirmed the grant of summary judgment on the Fourth Amendment claim on the

12  basis of qualified immunity.  First, the Court of Appeals noted that the Fourth Amendment

13  applied as it was clear Paul had been seized.  *Id.* at p. 918.  In affirming the grant of qualified

14  immunity the Court of Appeals noted the absence of "a single case squarely holding that an

15  officer cannot rely solely on the statements of a child sexual assault victim obtained during a

16  personal interview to establish probable cause, nor are we aware of one."  *Id.* at p. 922.

17        The *Stoot* case was initially filed on August 13, 2009 and then amended September 18,

18  2009.  Det. Hubenthal submitted her initial report to her supervisor on July 2, 2009 and it was

19  forwarded to the Deputy Prosecuting Attorney on July 14, 2009. The Deputy Prosecuting

20  Attorney filed the first Information on July 31, 2009.  All of this occurred prior to *Stoot* being

21  filed.  So, as of the date Det. Hubenthal initially interviewed the two Merrill children, there was

22  no law advising her or DPA Farr that they could not rely solely on a very young child's

23  statements to support a finding of probable cause.

24

1    However, the evidence before the Court is that Det. Hubenthal did not just rely on the

2    statements of a child victim.  Rather, she interviewed two children, ages 6 and 8, obtained and

3    reviewed written reports by a doctor who had examined the children, and interviewed the

4    children's mother.  There is no allegation that Det. Hubenthal coerced statements from the

5    children nor is there any allegation that the information contained in her report is untrue or

6    fabricated.  At the most the Plaintiff identifies inconsistencies he believes should have required

7    additional investigation.

8    "[T]here is no constitutional due process right to have child witnesses in a child sexual

9    abuse investigation interviewed in a particular manner, or to have the investigation carried out in

10   a particular way.  Interviewers of child witnesses of suspected sexual abuse must be given some

11   latitude in determining when to credit witnesses' denials and when to discount them, and we are

12   not aware of any federal law – constitutional, decisional, or statutory – that indicates precisely

13   where the line must be drawn.. . . . Consequently, mere allegations that Defendants used

14   interviewing techniques that were in some sense improper, or that violated state regulations,

15   without more, cannot serve as the basis for a claim under § 1983."  *Devereaux v. Abbey,* 263

16   F.3d 1070, 1075 (9th Cir. 2001).  As pointed out by the Defendant, the Plaintiff has never

17   asserted a *Devereaux* violation alleging deliberate fabrication of evidence.  Rather, the claim is

18   based on an allegation of improper interview techniques, which, without more, is not a

19   constitutionally viable claim.

20   Plaintiff also relies on *Stoot* for the proposition that "[a] police officer may be liable

21   under § 1983 when a prosecutor files criminal charges against a defendant without probable

22   cause."  *Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009)(citing *Hartman v. Moore*, 547

23   US 250, 261-3)."  ECF No. 59, p. 9.  The citation to *Stoot* is with regard to the Stoots claim that

24   the police officer violated Paul's Fifth Amendment right against self-incrimination by coercing a

1   confession from him during the interrogation.  The Defendants argued that Paul had no Fifth

2   Amendment claim as his statements were never used against him.  The issue before the Court of

3   Appeals in *Stoot* was when is a statement "used" in a criminal case.  The 9th Circuit Court of

4   Appeals concluded that the Fifth Amendment has been violated when government officials use

5   an incriminating statement to initiate or prove a criminal charge.  *Id.* at P. 925.  There is no Fifth

6   Amendment claim in this case.  Mr. Merrill never provided a statement to investigating officers

7   nor was he ever interrogated by them.

8          The Court concludes that the Plaintiff has failed to show any violation by Det. Hubenthal

9   of his Fourth Amendment rights as he was never seized or arrested.  All of the cases he has relied

10  on are based on an alleged unlawful seizure.  That simply did not happen here.

11         The Defendant concluded in her Motion for Summary Judgment that the only

12  Constitutional claim available to the Plaintiff was that of malicious prosecution and Det.

13  Hubenthal extensively briefed that issue.  In his Amended Complaint the Plaintiff asserted a

14  constitutional violation for malicious abuse of process.  ECF No. 7, p. 8.  The Plaintiff did not,

15  however, address the issue of malicious prosecution as a federal Constitutional claim in his

16  Response to Det. Hubenthal's motion for summary judgment.  He only asserts the claim of

17  malicious prosecution as a state law claim.  ECF No. 59, p. 16.  Plaintiff is deemed to have

18  abandoned this Constitutional claim.

19         Having reviewed the only federal constitutional claim asserted by the Plaintiff – violation

20  of his Fourth Amendment right to be free from unreasonable arrest without probable cause – the

21  Court concludes that the Defendant's motion should be granted.

22         The undersigned notes that the Plaintiff's Amended Complaint did not assert a violation

23  of his Fourteenth Amendment right as it relates to his right to care, custody and nurture of his

24

1   children.  It appears, from reading the complaint, that this is a damages element of Plaintiff's

2   claim and not an independently asserted right.

3   **STATE LAW CLAIMS AGAINST DET. HUBENTHAL**

4   The Plaintiff asserts three state law claims against Det. Hubenthal – malicious

5   prosecution, intentional infliction of emotional distress and negligence.

6   **Malicious Prosecution.**

7   To maintain an action for malicious prosecution, the Plaintiff must prove the following:

8   (1)  that the prosecution claimed to have been malicious was instituted or
continued by the defendant; (2) that there was a want of probable cause for the
9   institution or continuation of the prosecution; (3) that the proceedings were
instituted or continued through malice; (4) that the proceedings terminated on
10   the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff
suffered injury or damages as a result of the prosecution.

11

12   *Bender v. City of Seattle,* 99 Wn.2d 582, 593, 664 P.2d 492 (1983).

13   Malice and want of probable cause are the gist of the action, and the burden of proof rests

14   on the plaintiff.

15   As noted in *Bender,* the method of determining probable cause or the lack there of is as

16   follows:

17   If it clearly appears that the defendant, before instituting criminal proceedings
against the plaintiff, made to the prosecuting attorney a full and fair disclosure,
18   in good faith, of all the material facts known to him, and that the prosecuting
attorney thereupon preferred a criminal charge and caused the arrest of the accused,
19   probable cause is thereby established as a matter of law and operates as a complete
defense to a subsequent action by the accused.

20

21   *Id.* at 593, *citing to Peasley v. Puget Sound Tug & Barge Co.,* 13 Wash.2d 485, 498-99, 125 P.2d

22   681 (1942).

23   On the other hand, if the prosecuting witness, here Detective Hubenthal, failed to fully

24   and truthfully communicate to the prosecuting attorney all the facts and circumstances within her

1  knowledge, then there is an issue of fact that must be presented to the jury. *Bender, supra,* at p.

2  594.

3       Malice may be shown as part of the plaintiff's case in an action for malicious prosecution

4  "by proving that the prosecution complained of was undertaken for improper or wrongful

5  motives or in reckless disregard of the rights of the plaintiff." *Id.* at p. 594.

6       "Impropriety of motive may be established in cases of this sort by proof that the

7  defendant instituted the criminal proceedings against the plaintiff: (1) without believing him to

8  be guilty, or (2) primarily because of hostility or ill will toward him, or (3) for the purpose of

9  obtaining a private advantage as against him." *Id.* at P. 594.

10       With regard to the issue of probable cause, there is no evidence that Det. Hubenthal

11  withheld significant evidence, fabricated evidence or even shaded evidence in either of her

12  reports.  Rather, the clear evidence before the Court is that she made a full and fair disclosure of

13  all the material facts known to her.  In fact, most of the inconsistencies complained of by the

14  Plaintiff are found in Det. Hubenthal's reports – and not based on new, different or contradictory

15  evidence.  Deputy Prosecuting Attorney Farr made his charging decision based on Det.

16  Hubenthal's initial report and Deputy Prosecuting Attorney Klein made her decision to file

17  amended charges based on Det. Hubenthal's second report.

18       While the Plaintiff is critical of the manner in which Det. Hubenthal conducted her

19  investigation, such criticism does not negate the existence of probable cause to support the

20  charges.  The Court concludes, as a matter of law, that there was probable cause to support the

21  filing of criminal charges against Mr. Merrill.

22       In addition, it is clear that Deputy Prosecuting Attorney Farr made an independent

23  determination regarding the filing of charges.  There is no evidence that Det. Hubenthal

24  pressured, coerced or forced the Deputy Prosecuting Attorney to file any charges, much less the

1  ones that were in fact filed.  This holds true, as well, with regard to the amended charges

2  subsequently filed against Mr. Merrill by Deputy Prosecuting Attorney Klein.

3      The Plaintiff has also failed to show that Det. Hubenthal instituted or continued the

4  proceedings through malice.  There is absolutely no admissible evidence before the court to

5  support the conclusion that Det. Hubenthal conducted her investigation with an improper or

6  wrongful motive or in reckless disregard of the plaintiff's rights.  There is no evidence that she

7  did not believe the Plaintiff to be guilty – in fact, the evidence is to the contrary.  There is no

8  evidence of hostility – in fact there is no evidence that Det. Hubenthal even knew Mr. Merrill

9  prior to her receiving the assignment to investigate the complaint.  Further, it is clear that Mr.

10  Merrill has no recollection of ever meeting Det. Hubenthal.  Finally, there is a complete lack of

11  evidence to suggest that Det. Hubenthal obtained some type of private advantage over Mr.

12  Merrill through the investigation and report.

13      The undersigned finds that there was probable cause to support the filing of criminal

14  charges and that there was no malice on the part of Det. Hubenthal.  Therefore there is no viable

15  state claim for malicious prosecution.

16          **Intentional Infliction of Emotional Distress.**

17      In order to prove intentional infliction of emotional distress, or outrage, a plaintiff must

18  prove the following:  (1) extreme and outrageous conduct; (2) the defendant undertook the

19  conduct with the intent to cause severe emotional distress or with reckless disregard of that

20  possibility; and (3) the conduct in fact resulted in plaintiff's severe emotional distress.  *See Robel*

21  *v. Roundup*, 148 Wn.2d 35, 51 (2002).  Conduct is considered "extreme and outrageous" "only

22  where the conduct has been so outrageous in character, and so extreme in degree, as to go

23  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

24  a civilized community." *Grimsby v. Samson,* 85 Wn.2d 52, 59 (1975).  "The question of whether

Order Granting Motions for Summary Judgment        15

1  certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court

2  to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to

3  result in liability." *Diacomes v. State,* 113 Wn.2d 612, 630 (1989).

4          The Court concludes that the Plaintiff has failed to meet his burden with regard to this

5  state law claim.  First, the Court notes that there is no evidence before the court to show

6  "Plaintiff's severe emotional distress."  But, there is also no evidence before the Court to support

7  a conclusion that the manner in which Det. Hubenthal investigated the claim was "extreme and

8  outrageous" conduct.  Plaintiff appears to rely heavily on his interpretation in *Stoot* in that he

9  argues Det. Hubenthal's investigation was not objective as she should not have relied solely on

10 the two children's statements.  That, however, was not the law at the time Det. Hubenthal filed

11 her initial report and, the facts of *Stoot* are distinguishable from this case.  The Plaintiff also

12 assets that the investigation was performed in a negligent manner – that does not rise to the level

13 of "extreme and outrageous."  There is no evidence before this court to support the state law

14 claim of intentional infliction of emotional distress.

15         **Negligent Investigation.**

16         While Washington does not generally recognize a claim for negligent investigation, a

17 limited exception exists based on R.C.W. 26.44.050.  Generally this exception has been

18 exercised against the Department of Social and Health Services.  As pointed out by Defendant,

19 the Washington Supreme Court has not specifically decided if such a claim exists against law

20 enforcement.  As noted in *Roberson v. Perez,* 156 Wash. 2d 33, 45, fn. 10 (2005), "[f]or

21 purposes of this opinion, we assume without deciding that the same cause of action may also be

22 maintained against law enforcement."   In order to maintain a claim for negligent investigation

23 against the Department of Social and Health Services, the claimant must not only prove

24 negligence but also that the negligent investigation "lead to a 'harmful placement decision.'" *Id.*

1    At p. 46.  It is therefore clear that in order to proceed against Det. Hubenthal under the theory of

2    negligent investigation, based on *Roberson,* Mr. Merrill must also prove that Det. Hubenthal's

3    investigation "lead to a harmful placement decision."  A placement decision is harmful if it leads

4    to "placing the child in a abusive home, removing the child from a nonabusive home, or failing

5    to remove a child from an abusive home."  *Id.* at p. 46.

6        It is clear that Det. Hubenthal's investigation did not cause or lead to removal of the two

7    children from Mr. Merrill's home.  The "removal" was the result of the intervention from family

8    court and Jennifer Hardwick obtaining the Ex Parte Restraining Order on June 9.  June 9th is the

9    first notice Det. Hubenthal had of the allegations.  At the June 18, 2009 scheduled hearing on the

10   Ex Parte Restraining Order, a stipulated order, signed by Mr. Merrill, was filed with the Court

11   that extended the restraining order prohibiting any contact with the children to the next court date

12   of July 2, 2009.  As noted above, Det. Hubenthal first interviewed the two girls on June 16, 2009

13   and she did not prepare her first report until July 1, 2009.  In addition, Det. Hubenthal first

14   attempted to contact Mr. Merrill on June 25, 2009 which was one week after the June 18th

15   hearing.

16       On July 2, 2009, the day after Det. Hubenthal prepared her first report and before it was

17   provided to anyone outside law enforcement, a Temporary Order was entered which restrained

18   Mr. Merrill from having any contact with his ex-wife and children "pending completion of CPS

19   investigation which thereafter either party may cite matter back before the court for review."  In

20   addition, the court reserved "making an adequate cause determination pending CPS

21   investigation."  This Temporary Order was agreed to by Mr. Merrill and was signed by Mr.

22   Merrill's attorney, Dru Horenstein.  ECF No. 26-21, ECF No. 26-5, p. 10 – 11.  Clearly, the

23   placement decisions were not the result of Det. Hubenthal's investigation.  In fact, the decision,

24   at least as of July 2, 2009, was dependent on CPS and not Det. Hubenthal.

1    Finally, on April 19, 2010 Mr. Merrill relinquished his parental rights to permit a step-

2    parent adoption.  ECF No. 26-6, p. 23 – 28.

3    According to the evidence, the "placement decision" was the direct result of actions taken

4    by Jennifer Hardwick, the girls' mother, based on statements they made to her.  This decision

5    was implemented prior to Det. Hubenthal commencing any type of investigation.  The July 2,

6    2009 order which prohibited contact between Mr. Merrill and his daughters was entered prior to

7    Det. Hubenthal's report even being forwarded to the Prosecuting Attorney for a charging

8    decision.

9    The undersigned can only conclude, as a matter of law, that the investigation by Det.

10   Hubenthal did not result in a harmful placement decision and Plaintiff's claim for negligent

11   investigation necessarily fails.

12   For the above reasons, all claims of the Plaintiff against Det. Hubenthal are hereby

13   DISMISSED.

14   **PLAINTIFF'S CLAIMS AGAINST THE CITY OF VANCOUVER**

15   Mr. Merrill's claims against the City include various alleged constitutional violations to

16   include (1) a policy, custom or practice that permitted police officers to unlawfully arrest and

17   detain citizens without probable cause, and unlawfully commence and maintain criminal

18   prosecutions against citizens, (2)  failure to train, (3) failure to supervise as well as liability based

19   on respondeat superior for state law claims of malicious prosecution, intentional infliction of

20   emotional distress and negligence.  ECF No. 7.

21   Having determined that Detective Hubenthal is not liable under the claims of malicious

22   prosecution, intentional infliction of emotional distress or negligence, those claims cannot stand

23   against the City of Vancouver and they are hereby DISMISSED.

24

1    With regard to the specific constitutional claims against the City of Vancouver, there are

2    some additional facts which must be set forth.

3    **Statement of Additional Facts – City of Vancouver.**

4    Sergeant Rex Gunderson is currently retired from the City of Vancouver Police

5    Department.  In June 2009 he was employed by the City of Vancouver and assigned to the

6    Children's Justice Center (CJC), formerly known as the Child Abuse Intervention Center

7    (CAIC).  Mr. Gunderson is not named as a party.  He is the only other City employee involved in

8    this litigation in addition to Det. Hubenthal.

9    As part of his responsibilities, Sergeant Gunderson is the supervisor who reviewed Det.

10   Hubenthal's July 1, 2009 report.  He reviewed the reports like an "editor" checking to make sure

11   the information blocks were filled in, that the documents listed as attached were actually attached

12   and that the report was readable.  ECF No. 44, p. 2.  (Declaration of Rex Gunderson).  The report

13   was then forwarded to the prosecutors within the CJC/CAIC for their review and decision as to

14   whether charges should be filed.

15   Sergeant Gunderson's involvement with this case was limited to his review of the July 1,

16   2009 report.  *Id.* at p. 2 – 3.  Sergeant Gunderson's training log was provided as Exhibit A to his

17   declaration.  *Id.* at p. 1 – 14.  According to counsel for the City, this reflects "over 79 hours in

18   training dedicated to children's justice, child abuse, and child abuse investigation and

19   interviewing."  ECF No. 41, p. 7.

20   Detective Hubenthal also discussed her professional training during her deposition on

21   June 4, 2013 (ECF No. 42-2) and her training records have been provided.  ECF No. 42-1.

22   According to counsel for the City, these records reflect "36 training hours dedicated to child

23   abuse" in 2007, "38 hours of training dedicated to interviewing and interrogation, sexual assault

24   investigation, and child abuse investigation and interviewing" in 2008 and that in 2009 Det.

1  Hubenthal attended "the 36 hour of Child Abuse and Family Violence Summit, in addition to
2  other training."  ECF No. 41, p. 8.
3         The Court notes that there is no evidence before it that would lead to the conclusion that
4  this amount of training for either Det. Hubenthal or Sergeant Gunderson was in adequate.
5         **Municipal Liability under *Monell*.**
6         In order for the City of Vancouver to be liable under *Monell v. Dept. of Social Services,*
7  436 U.S. 658 (1978), the Plaintiff must prove the following:  (1) that he was deprived of a
8  constitutional right, (2) the city had a policy, practice, or custom that amounted to 'deliberate
9  indifference" to the constitutional right, **and** (3) that the policy  was the "moving force" behind
10 the constitutional violation.   *Levine v. City of Alameda,* 525 F.3d 903, 907 (9th Cir.
11 2008)(quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978) and *Van Ort v. Estate*
12 *of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996))(emphasis added).  The failure to meet any one of
13 these requirements compels dismissal of the claims.
14        **(1)  Constitutional Right.**
15        The only Constitutional violation asserted by the Defendant is violation of his Fourth
16 Amendment right to be free from unlawful seizure.  He asserts that the investigation by Det.
17 Hubenthal was flawed, that the review by her Supervisor Sergeant Gunderson was inadequate,
18 and that the flawed investigation and review then caused the Deputy Prosecuting Attorney to file
19 charges against Mr. Merrill without probable cause.  He asserts that probable cause was missing
20 because of the flawed investigation to include failure to corroborate the girls' statements as well
21 as the inconsistencies in their statements.
22        As already determined by the Court, Det. Hubenthal did not violate Plaintiff's Fourth
23 Amendment rights.   Municipal liability is absent if the Plaintiff fails to prove that a municipal
24

1  employee violated his constitutional rights.  *City of Los Angeles v. Heller,* 475 U.S. 796, 799

2  (1986); *Gregory v. County of Maui,* 523 F.2d 1103, 1109 (9th Cir. 2008).

3       The only other City of Vancouver employee identified by the Plaintiff is Sergeant

4  Gunderson.  As noted above, Sergeant Gunderson's involvement in this case was limited to his

5  review of Det. Hubenthal's July 1, 2009 report.  He did not participate in the investigation; he

6  had no contact with the plaintiff, the plaintiff's ex-wife, or his two daughters.  He did not discuss

7  potential charges with the prosecutor.  ECF No. 44.

8       It is difficult to see how Sergeant Gunderson's limited involvement could have caused an

9  infringement on Mr. Merrill's Fourth Amendment right when the full investigation by Det.

10 Hubenthal did not.  The Plaintiff has provided no evidence or argument that Sergeant Gunderson

11 did anything that caused a violation of Mr. Merrill's Fourth Amendment right.  Municipal

12 liability is absent if the Plaintiff fails to prove that a municipal employee violated his

13 constitutional rights.  *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Gregory v. County*

14 *of Maui,* 523 F.2d 1103, 1109 (9th Cir. 2008).

15      The Court concludes that Mr. Merrill has failed to prove the first element of *Monell*

16 liability – he has not shown that any City of Vancouver employee deprived him of a

17 Constitutional right.  On that basis alone, the City of Vancouver's motion should be GRANTED.

18      Even if the Plaintiff had been able to establish a constitutional violation, he has failed to

19 present any evidence to support the other three elements of his *Monell* claim.

20

21

22      **(2)  Policy, custom or practice of the City of Vancouver**

23      The Plaintiff alleges that the City's policy was one of inaction in that Sergeant Gunderson

24 did not "actively supervise CJC investigators to make sure they were following investigative

1    policies when making their reports."  ECF No. 60 p. 4.  Mr. Merrill then goes on to assert that

2    Sergeant Gunderson "testified the prosecutors did not review the adequacy of investigations and

3    seldom, if ever, asked for more information.  EXH X p. 390."  ECF No. 60, p. 4.  That is not,

4    however, what Sergeant Gunderson testified to.  The actual testimony of Sergeant Gunderson, at

5    the location cited by the Plaintiff, is as follows:

6           My detectives would go out and get the facts and get to a point that it seemed
            they have a case that can go forward and then we send it forward.  Sometimes the
7           prosecutor asks for more generally they do not, which is support to myself and
            the detectives that they're getting enough of the information in each case to make
8           their decision, their charging decision.

9    Sergeant Gunderson never testified that the prosecutors, who are Clark County employees, do

10   not review the adequacy of investigations.  In fact, his testimony is just the opposite.

11          The Plaintiff takes the position that the manner in which Sergeant Gunderson reviewed

12   Det. Hubenthal's report was a "policy, custom or practice" of the City of Vancouver but he does

13   not then explain how that is the case.  In order to prove municipal liability, the Plaintiff would

14   need to show that the City of Vancouver had a "longstanding practice or custom which

15   constitutes the 'standard operating procedure' of the local governmental entity."  *Gillette v.*

16   *Delmore,* 979 F.2d 1342, 1346 (9th Cir. 1992).  This can be proven through "evidence of repeated

17   constitutional violations for which the errant municipal officers were not discharged or

18   reprimanded."  *Id.* at p. 1349.  There is no such proof before the Court.

19          The Plaintiff has failed to establish the existence of any policy, custom or practice much

20   less one that showed deliberate indifference to a constitutional right.

21          **(3)  Moving Force.**

22          In light of the preceding discussion regarding *Monell* liability, the fact that there has been

23   no constitutional violation by any City employee, that there is no "policy, custom or practice" of

24   the City of Vancouver that exhibits deliberate indifference to Mr. Merrill's Fourth Amendment

1    Constitutional right, there then can be no proof to support the third element of his *Monell* claim.

2    Mr. Merrill has failed to prove that there was a policy, practice or custom that exhibited

3    deliberate indifference to his Fourth Amendment right and that such policy, practice or custom

4    was the moving force behind the Constitutional deprivation.

5              **Failure to Train and Supervise.**

6              Mr. Merrill asserts that City of Vancouver is liable for its failure to adequately train and

7    supervise Det. Hubenthal and Sergeant Gunderson.  He has failed, however, to show that either

8    Det. Hubenthal or Sergeant Gunderson was not adequately trained.  Both individuals training

9    records are before the Court and there is no testimony or evidence that such training was

10   inadequate.  In addition, Mr. Merrill has failed to present any evidence to support a conclusion

11   that the training received by Det. Hubenthal and Sergeant Gunderson led to a violation of Mr.

12   Merrill's Fourth Amendment rights.

13             In addition, there is no competent testimony or evidence that the City of Vancouver

14   breached any obligation to supervise much less that such breach led to a violation of Mr.

15   Merrill's constitutional Fourth Amendment right.

16             For the above stated reasons, all claims of the Plaintiff against the City of Vancouver are

17   hereby DISMISSED.

18

19

20             **PLAINTIFF'S CLAIMS AGAINST CLARK COUNTY, PROSECUTING
               ATTORNEYS AND DEPUTY PROSECUTING ATTORNEYS**

21

22             The Plaintiff named the current Prosecuting Attorney for Clark County, Anthony Golik;

23   the prior Prosecuting Attorney, Arthur Curtis, and two Deputy Prosecuting Attorneys, Anna

24

1    Klein and Scott Jackson.  The Plaintiff did not name Kimberly Farr who is the Deputy

2    Prosecuting Attorney who made the initial charging decision.

3         The Prosecuting Attorneys and Deputy Prosecuting Attorneys assert the defense of

4    absolute prosecutorial immunity.  It is abundantly clear that they are entitled to that immunity.

5         **Additional Facts – Clark County and Prosecutors**

6         Anthony Golik served as a deputy prosecuting attorney from 2000 until January, 2011 at

7    which time he took office as the Prosecuting Attorney for Clark County.  During his time as a

8    deputy prosecuting attorney he had no involvement in the case against Mr. Merrill.    EF No. 36.

9    Since he became the Prosecuting Attorney for Clark County the only involvement he has had in

10   the Merrill case is this litigation.  The only "event" that occurred during Mr. Golik's tenure as

11   Prosecuting Attorney was the filing of the order dismissing all charges with prejudice on May

12   20, 2011.  The original order dismissing all criminal charges without prejudice occurred on April

13   20, 2010 – prior to Mr. Golik becoming the Prosecutor.

14        Arthur Curtis served as Prosecuting Attorney for Clark County from January 1981 until

15   January 2011.  Mr. Curtis has no recollection of the Warren Merrill case and has stated that he

16   had no other involvement in the case other than as indicated by Deputy Prosecuting Attorneys

17   Scott Jackson and Anna Klein.  ECF No. 35.  Both Scott Jackson and Anna Klein state that

18   Arthur Curtis approved the final resolution of Mr. Merrill's criminal case and that was the total

19   extent of Mr. Curtis' involvement.

20        According to her Declaration (ECF No. 31), Deputy Prosecuting Attorney Anna Klein

21   was assigned the case against Mr. Merrill after Mr. Farr filed the charges.  She also filed an

22   Amended Information on December 15, 2009 which included new charges.  The new charges

23   were based on her review of the investigative report prepared by Det. Hubenthal on December 8,

24   2009.  It was DPA Klein's conclusion that the second report contained probable cause to support

1   the new charges and for that reason she filed an Amended Information. The case was ultimately

2   resolved through negotiations with Mr. Merrill's counsel, Jon McMullen, which required Mr.

3   Merrill to relinquish his parental rights, to agree to a protective order prohibiting him from

4   contacting his children and the criminal case then being dismissed without prejudice for one

5   year. If Mr. Merrill did not intervene in the adoption proceedings to reinstate himself as the

6   father of the children for the following year, then the charges were to be dismissed with

7   prejudice. That in fact occurred on May 23, 2011.

8        According to his Declaration (ECF No. 32), Deputy Prosecuting Attorney Scott Jackson

9   has served in that capacity since 1995 and he served as supervisor of the deputy prosecuting

10  attorneys in the Children's Justice Center from January 2010 to January 2011. His involvement

11  in the Merrill criminal case included his sitting in on the child interviews conducted by Jon

12  McMullen, discussing the case with DPA Klein and having conversations with Mr. McMullen

13  negotiating resolution of the case.

14       Mr. Jackson also testified during his deposition, that Mr. McMullen is the individual who

15  sought the final resolution of the case against Mr. Merrill. "Any deal that had to do with parental

16  rights being relinquished was something that the defense was adamantly pushing to us to get us

17  to dismiss the case because otherwise we were going forward. And they were looking for some

18  way to resolve this case. So I just want it to be clear this was something the defense was

19  advocating for. It was not something that the prosecution was advocating for." ECF No. 34,

20  Exh. 7.

21       **Absolute Prosecutorial Immunity**

22       Prosecutors are entitled to absolute immunity for:

23       1.      Charging decisions (*Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989),

24       2.      Failure to dismiss charges (*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009),

1        3.      Actions related to engaging in plea bargaining (*Briley v. State of California,*, 564 F. 2d 849 (9th Cir. 1977), and

2

3        4.      Claims of inadequate supervision and training of prosecutors (*Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009; *Lacey v. Maricopa County,* 649 F.3d 1118 (9th Cir. 2011).

4

5        The Plaintiff has presented no facts to support a conclusion that Arthur Curtis,

6  Prosecuting Attorney, or the Deputy Prosecuting Attorneys engaged in acts that were not

7  associated with the discharge of their prosecutorial functions.  With regard to Prosecutor Golik,

8  there is no evidence he did anything related to this case.  There is no reason for him to be a party.

9        The Plaintiff agrees with the concept of absolute prosecutorial immunity but asserts that

10  the actions of the various deputy prosecutors were "administrative" rather than prosecutorial.

11  Other than making that statement, however, the Plaintiff has failed to offer any proof that the

12  named parties did anything in this case that was outside their prosecutorial duties.  There is

13  certainly no evidence that the deputy prosecuting attorneys or the prosecuting attorneys

14  performed anything that would be considered to be "administrative" – such as making personnel

15  decisions as was the case in *Broyles v. Thurston Cnty,* 147 Wn. App. 409, 195 P.3d 985 (Div. II,

16  2008).

17        Mr. Merrill does attack the actions of a non-party, Deputy Prosecuting Attorney Kim

18  Farr.  Although Mr. Farr is not a party, it behooves the Court to note that his statements in

19  support of the Summons clearly attributed the information he relied on to the information

20  contained in Det. Hubenthal's report.  His actions do not mirror those in *Kalina v. Fletcher,* 522

21  U.S. 118, 118 S. Ct. 502 (1997).  If he were a party, he would be entitled to absolute

22  prosecutorial immunity.

23        Mr. Merrill relies on Mr. Farr's testimony in his deposition for the following:  "Mr. Farr

24  stated that he took no prosecutorial action against Mr. Merrill because at that point in his career,

1   he charged the case and just passed it off to another prosecutor.  EXH U P 326."  ECF No. 61, p.

2   9.  The cited portion of Mr. Farr's deposition does not support this assertion.  In fact, the Court is

3   not provided with the question put to Mr. Farr but only his answer, which is as follows:

4       No.  I think that at that point in my career, I think I was charging and then
        passing the case off to deputy prosecutors who probably – who may have
5       reviewed this as it came out.  But I did not after having made the charging
        decision.

6

7       DPA Farr's testimony is that he did take prosecutorial action against Mr. Merrill – he

8   filed the charges.  Then the case was passed on to another prosecutor.  His actions were the

9   actions of a deputy prosecuting attorney for Clark County.  DPA Farr was entitled to rely on the

10  investigation by Det. Hubenthal and Plaintiff points to no legal obligation on his part to  make an

11  independent investigation to determine whether there is probable cause to support the charges.

12      DPA Farr acted within his prosecutorial obligations as did DPA Klein and DPA Jackson.

13  Clark County is therefore also immune for the actions taken by the prosecutors in the

14  performance of their official duties.  *Creelman v. Svenning,* 67 Wn.2d 882, 885, 410 P.2d 606

15  (1966).

16      **Failure to Train or Supervise.**

17      Mr. Merrill asserts that the Clark County Prosecutors and Deputy Prosecuting Attorneys

18  were acting in their "administrative" capacities when they failed to adequately train or supervise

19  Det. Hubenthal, the investigator.  He has not presented, however, any evidence or testimony to

20  support the conclusion that either of the elected County Prosecutors or the Deputy Prosecuting

21  Attorneys had any training or supervisory authority over Det. Hubenthal or Sergeant Gunderson.

22      In addition, the Plaintiff has failed to show that Det. Hubenthal or Sergeant Gunderson's

23  actions or inactions deprived him of his Fourth Amendment Constitutional right

24      **State Law Claim – Malicious Prosecution**

1    Generally, prosecuting attorneys, as quasi-judicial actors, are absolutely immune from

2    liability for acts done in the performance of their official duties even if they act maliciously or

3    willfully.  *Mitchelle v. Steele,* 39 Wn.2d 473, 474, 236 P.2d 349 (1951), *Musso-Escude v.*

4    *Edwards,* 101 Wn.App. 560, 4 P.3d 151 (2000).   All the prosecuting attorneys are entitled to

5    absolute immunity from the Plaintiff's claim of malicious prosecution.  Based on that immunity,

6    the County is entitled to immunity as well.

7    Mr. Merrill makes the frivolous claim that the Deputy Prosecuting Attorneys were

8    "required" to disclose their thought process and conclusion that there were "major proof

9    problems" with their case and they did not think they could win.  This is not evidence and clearly

10   not subject to any disclosure requirement.  In addition, this concern came about following Mr.

11   McMullen's interview with the two girls – information already known to Mr. Merrill.  This

12   assertion does not support any claim of malicious prosecution as against the County defendants.

13   In addition, the Malicious Prosecution claim against the various prosecuting attorneys

14   and the County fails for the same reason it fails as against Det. Hubenthal.

15   **Intentional Infliction of Emotional Distress.**

16   The Deputy Prosecuting Attorneys are entitled to absolute prosecutorial immunity against

17   this claim.  The Plaintiff has presented to evidence to support it.  There is no basis to even bring

18   such a claim against the two Prosecuting Attorneys Golik and Curtis.

19   **Negligence.**

20   Mr. Merrill bases his negligence claim on his assertion that the Deputy Prosecutor had

21   the duty to provide "exculpatory" evidence to the defense.  He makes the novel and baseless

22   assertion that the "exculpatory" evidence was the prosecutor's conclusion that she did not think

23   she could win the case.  That is not exculpatory and, as noted above, is not discoverable in a

24

1   criminal case.  There is no basis for a negligent investigation claim against any of the County

2   defendants.

3        Mr. Merrill and his counsel knew all the facts involving both his family law case and his

4   criminal case.  He certainly faced difficult decisions, but he made his decision after full

5   consultation with his counsel and with full knowledge of all the discoverable facts.  In fact, it

6   appears that Mr. Merrill and his attorney knew more than the Prosecutors as Mr. McMullen had

7   talked with the au pair and the Prosecutors had not.  It was Mr. Merrill's attorney who, on behalf

8   of Mr. Merrill, convinced the prosecuting attorneys to dismiss the case on the condition that he

9   relinquish his parental rights and agree to the imposition of a restraining order.

10       For the reasons stated above, all of Plaintiff's claims against the County Defendants are

11  hereby DISMISSED.

12                          **PLAINTIFF'S CROSS MOTIONS**

13       Both Defendant Hubenthal and Golik have advised this Court that should the defendants'

14  summary judgment motions be granted, that they will voluntarily dismiss their counterclaims for

15  malicious prosecution.  All the motions have been granted.  The Court will defer ruling on the

16  Plaintiff's motions to dismiss the counterclaims until October 18, 2013.  If the counterclaims

17  have not been dismissed by that date, then the undersigned will rule on the pending motions.

18                                **ORDER**

19       The Summary Judgment Motions of all the Defendants (ECF No. 24, 29 and 41) are

20  hereby GRANTED and all the claims of the Plaintiff against the Defendants are hereby

21  DISMISSED.

22       Plaintiff's Motion to Dismiss (ECF No. 54) and Motion for Partial Summary Judgment

23  (ECF No. 55) shall be renoted by the Clerk for October 18, 2013.  The motions will be stricken if

24  Defendants Hubenthal and Golik have voluntarily dismissed their counterclaims prior to that

1  date.  If the counterclaims have not been dismissed by that date, then the Court will issue its

2  ruling.

3        DATED this 13th day of September, 2013.

4

5

6                                              Karen L. Strombom
                                               United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24